**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**BETTY FREEMAN,**

**Plaintiff,**

**v.** **Case No: 8:16-CV-2038-T-27TGW**

**BAYVIEW LOAN SERVICING, LLC,**

**Defendant.**

______________________________/

**ORDER**

**BEFORE THE COURT** are Plaintiff's Motion to Dismiss (Dkt. 10), Defendant's response (Dkt. 13), Defendant's Motion for Dismissal and for Sanctions Against Betty Freeman and Korte & Wortman, P.A. Pursuant to Fed. R. Civ. P. 11 (Dkt. 11), supplement (Dkt. 12), and Plaintiff's response (Dkt. 15). An evidentiary hearing was conducted on February 28, 2017. On consideration, Plaintiff's Motion to Dismiss is GRANTED. Defendant's Motion for Sanctions is DENIED.

## I. BACKGROUND

The Complaint alleges that Bayview Loan Servicing, LLC violated Regulation X of the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.* ("RESPA"). Specifically, Plaintiff alleges that through counsel (Korte & Wortman), she mailed a request for information ("RFI") regarding her mortgage loan to Bayview pursuant to Regulation X, that the certified mail return receipt shows that Bayview received the RFI on January 13, 2016, but that Bayview failed to send a "written response acknowledging receipt within the required time frame" of five days under

Section 1024.36(c) of Regulation X (Dkt. 2, ¶¶ 14, 15, 24).[1]

The Complaint further alleges that having not received a written acknowledgment to Plaintiff's RFI, Korte & Wortman sent Bayview a Notice of Error ("NOE"), stating that it was "unsure as to whether you have received our client's request" and that Bayview had "failed to provide timely written acknowledgment of receipt of the Request." (Def. Ex.6). Korte & Wortman, through its associate, Elizabeth Cline, filed this case in small claims court in Pinellas County, seeking "actual damages in certified postage costs of less than $100 for mailing the NOE, and attorney's fees and costs." (Dkt. 2, ¶ 27). In this case, the claimed damages are **$5.65**. Cline filed approximately fifty similar cases in Pinellas County.

A timeline of the relevant events:

| | |
|---|---|
| **January 13, 2016** | Bayview receives the RFI from Korte & Wortman, evidenced by the certified mail return receipt signed by Bayview's representative (Def. Ex. 2) |
| **January 20, 2016** | Bayview sends an Acknowledgment Letter directly to Plaintiff (Def. Ex. 3) |
| **January 25, 2016** | Bayview sends a letter to Korte & Wortman, explaining that the law firm is not an authorized third party and requests an authorization (Def. Ex. 4) |
| **March 14, 2016** | Korte & Wortman sends Bayview the authorization form, which was signed by Plaintiff on December 9, 2016 (Def. Ex. 5) |
| **May 16, 2016** | Korte & Wortman sends Bayview the NOE (Def. Ex. 6) |

[1] According to Defendant's motion, in April 2007, Plaintiff executed an adjustable rate note in favor of Capital Six Funding, in the principal amount of $172,500 and a mortgage which encumbers the property located in Charleston, South Carolina. Plaintiff defaulted on her loan, and remains in default. On October 18, 2012, Defendant became the servicing agent and attorney-in-fact on the loan for the Bank of New York Mellon. Bank of New York has initiated foreclosure proceedings against Plaintiff in Charleston.

| | |
|---|---|
| **June 6, 2016** | Bayview responds to the NOE[2] |
| **July 15, 2016** | Korte & Wortman files this case; Bayview removes it based on federal question jurisdiction |
| **July 25, 2016** | Bayview serves a 21-day safe harbor letter and proposed motion for Rule 11 sanctions on Korte & Wortman (Def. Ex. 8) |
| **August 15, 2016** | Plaintiff is deposed in South Carolina |
| **August 17, 2016** | Plaintiff moves to voluntarily dismiss the case with prejudice pursuant to Rule 41(a)(2) |
| **August 29, 2016** | Bayview files its motion for sanctions |

## II. STANDARD

Under Rule 11, an attorney who files a pleading in federal court "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or lack of information.

Sanctions may be awarded pursuant to Rule 11: "(1) when a party files a pleading that has

[2] This letter was not offered into evidence during the hearing, but Korte and Wortman have not disputed that it was sent.

no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) when the party files a pleading in bad faith for an improper purpose." *Anderson v. Smithfield Foods, Inc.*, 353 F.3d 912, 915 (11th Cir. 2003) (quoting *Massengale v. Ray*, 267 F.3d 1298, 1301 (11th Cir. 2001)).

The propriety of Rule 11 sanctions is determined by an objective standard. The inquiry is "whether the party's claims are objectively frivolous" and "whether the person who signed the pleadings should have been aware that they were frivolous." *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998). Where "the plain language of an applicable statute and the case law preclude relief," sanctions are appropriate. *Id.* (footnotes omitted). As the Advisory Committee Notes for Rule 11 explain, however, "Rule 11 motions . . . should not be employed . . . to test the legal sufficiency or efficacy of allegations in the pleadings; other motions are available for those purposes." Fed. R. Civ. P. 11 advisory committee's note (1993 Amendments); *Lawson v. Sec'y, Dep't of Corr.*, 13-12786, 2014 WL1491862, *1 (11th Cir. Apr. 17, 2014) (quoting *Cooler & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990)) ("'[T]he imposition of a Rule 11 sanction is not a judgment on the merits of an action. Rather, it requires the determination of a collateral issue: whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate.'").

## III. DISCUSSION

Regulation X requires a loan servicer like Bayview to acknowledge in writing its receipt of a RFI from a borrower within five days of the request. 12 C.F.R. § 1024.36(c).[3] A Defendant may

[3] Section 1024.36(c) of Regulation X provides: "Acknowledgment of receipt. Within five days (excluding legal public holidays, Saturdays, and Sundays) of a servicer receiving an information request from a borrower, the servicer shall provide to the borrower a written response acknowledging receipt of the information request." 12 C.F.R. §

be liable for failure to comply with its provisions in an amount equal to the sum of "any actual damages to the borrower as a result of the failure." 12 U.S.C. § 2605(f)(1)(A).[4] Indeed, "damages are an essential element in pleading a RESPA claim." *Renfroe v. Nationstar Mortgage, LLC*, 822 F.3d 1241, 1246 (11th Cir. 2016).

Intending to develop a national litigation model alleging violations of Regulation X, Korte & Wortman flooded the court system with hundreds of lawsuits similar to this one, on behalf of clients in Florida and elsewhere. Attorney Cline filed approximately 50 such cases in Pinellas County during the six months she worked at the firm. She explained that the firm's goal was to file ten cases per week. She selected and vetted cases, like Plaintiff's, from the "hundreds and hundreds" of clients provided to her by the firm. While the firm's motive in filing these cases was ostensibly to assist its clients in avoiding foreclosures, the actual motive, as is evident from the record, was to generate attorney fees under RESPA.[5]

However troubling the firm's motives, the questions under Rule 11 are whether the firm had a reasonable factual basis to (1) file the lawsuit; (2) seek actual damages; and (3) continue litigation after receiving Bayview's Rule 11 safe harbor letter.

---

1024.36(c).

[4] A borrower may also recover statutory damages in the amount of $2,000 if there is a pattern or practice of noncompliance with RESPA. 12 U.S.C. § 2605(f)(1)(B). Plaintiff does not, however, seek statutory damages.

[5] In this case, for example, it is apparent from Plaintiff's deposition that she was under the mistaken impression that Korte & Wortman was assisting her in avoiding foreclosure. Notwithstanding, Plaintiff signed, as part of her Retainer Agreement, a "Dodd-Frank Mortgage Serving Violations Litigation Disclosure":

> Please be advised that this matter is not being prosecuted for the purpose of seeking a loan modification on your behalf, reversing the result of any existing or prior foreclosure litigation, postponing, vacating or cancelling any existing foreclosure sales, extinguishing or invalidating any existing mortgage(s), repairing any credit related issues or any other relief aside from limited monetary damages, if applicable, in accordance with federal law.

(Def. Ex. 13).

***Plaintiff had a reasonable factual basis to file the lawsuit***

It is undisputed that Bayview received the RFI, as evidenced by the certified mail return receipt Korte & Wortman attached to the Complaint. And while it was ultimately established that Bayview did acknowledge in a letter to Plaintiff that it received the RFI, attorney Cline testified that before she filed suit, Plaintiff told her that she had not received an acknowledgment letter from Bayview.[6] Based on that, a reasonable factual basis existed to file the lawsuit alleging a violation of Regulation X.

While Plaintiff ultimately equivocated in her deposition on whether she received Bayview's acknowledgment letter, it remains undisputed on this record that she told Cline she never received the letter, before Cline filed suit. And when Cline received the safe harbor letter from Bayview, she spoke with Plaintiff again, who confirmed that she had not received the acknowledgment letter. Cline therefore had a reasonable factual basis to continue the litigation, at least until Plaintiff was deposed and equivocated on whether she had received the letter.

While the evidence that Plaintiff never received Bayview's written acknowledgment is not very convincing, particularly in the absence of an affidavit or testimony from Plaintiff explaining her deposition testimony, that she later equivocated, after which the firm moved to dismiss her case, does not make the initial filing and continued pursuit of the case objectively frivolous. *See Peer v. Lewis*, 606 F.3d 1306, 1311 (11th Cir. 2010) ("The court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time

---

[6] Notwithstanding, based on the evidence, I find that Bayview did send Plaintiff a written acknowledge of having received the RFI. And ultimately, during her deposition, Plaintiff seemingly equivocated about whether she received the written acknowledgment from Bayview. While Mr. Korte maintained during the hearing that Plaintiff testified that she never received the letter, he conceded that when Plaintiff was asked if she had seen the written acknowledgment letter, she testified only that "I haven't seen this one. It's probably still in the drawer" at her home. (Dkt. 12-1 at 25:21-36:21).

the pleading, motion, or other paper was submitted.") (citing Fed. R. Civ. P. 11 advisory committee note of 1983).

To the extent Bayview contends that the NOE was sent solely to manufacture a claim for damages, I could not agree more. The most compelling evidence of this is the false statement in the NOE that Korte and Wortman was "unsure" whether Bayview received the RFI. But in the Complaint, Korte and Wortman expressly alleged that Bayview received the RFI (Dkt. 2 ¶¶ 15-16). If that was the only justification for sending the NOE, I would not hesitate to impose sanctions. However, immediately after that false statement is the assertion: "Based on review of our records, and in violation of 12 C.F.R. Section 1024.36(c), you have failed to provide timely written acknowledgment of receipt of the request." (Def. Ex. 6).

As discussed, there was a reasonable factual basis for that assertion. And while the firm admits that the certified mail return receipt signed by Bayview's agent proves its receipt of the RFI, it maintains that signing the certified mail return receipt does not constitute the written acknowledgment required by Regulation X. The firm argues that case law on what constitutes a "written acknowledgment" is "sparse" (Dkt. 15 at 7).

Notwithstanding, ten days *after* this suit was filed, in a case in which Korte and Wortman also represented the plaintiff, a district court judge in the Southern District of Florida determined that a servicer's signed certified mail return receipt constituted a written acknowledgment within the meaning of § 1024.36(c). *Meeks v. Ocwen Loan Servicing LLC*, No. 16-CV-81003, 2016 WL 3999570, at *6 (S.D. Fla. July 26, 2016), aff'd, No. 16-15536, 2017 WL 782285 (11th Cir. Mar. 1, 2017) ( "Plaintiff's unsupported argument that the Certified Receipt does not constitute a 'written response' within the meaning of § 1024.36(c) is an argument based entirely in semantics that the

Court, while forced to entertain, finds unpersuasive."). The Eleventh Circuit affirmed, rejecting Korte and Wortman's contention, but acknowledged "whether a Certified Receipt qualifies as a 'written response acknowledging receipt' is an issue of first impression." *Meeks v. Ocwen Loan Servicing LLC*, No. 16-15536, 2017 WL 782285, at *2 (11th Cir. Mar. 1, 2017) (holding that where the plaintiff's "attorneys unquestionably received the Certified Receipt in response signed by Ocwen's . . . Regulation X was satisfied.").

While Korte and Wortman's contention that the certified mail return receipt does not constitute "written acknowledgment" has now been definitively rejected, it cannot be objectively said that when the case was filed, its contention was not warranted under existing law or was based on a legal theory that had no reasonable chance of success and could not be advanced as a reasonable argument to change existing law. The firm is correct that when this case was filed, there was uncertainty on the issue. Sanctions are not warranted when an attorney advances a novel legal theory or an issue of first impression. *See Baker*, 158 F.3d at 524 ("[t]he purpose of Rule 11 is to deter frivolous lawsuits and not to deter novel legal arguments or cases of first impression.").

And while the district court's decision in *Meeks* was rendered the same day Bayview sent its Rule 11 safe harbor letter to Korte and Wortman, the firm was not obligated to dismiss the case. Rather, as the Eleventh Circuit noted, *Meeks* was a case of first impression and the firm therefore had an objectively good faith basis to advance a nonfrivolous argument to urge reversal of *Meeks* and establish new law.

***Plaintiff had a reasonable factual and legal basis to allege actual damages***

While I strongly question whether negligible incidental expenses incurred by the firm in mailing the NOE constitute actual, compensable damages under RESPA, several district courts in

the Southern District have concluded that photocopying costs, postage costs, and reasonable attorney's fees incurred after an incomplete or insufficient response to a RFI constitute actual damages under RESPA.[7] Korte and Wortman was therefore justified in relying on those cases. Objectively, when the case was filed, there was at least an arguable legal basis for that allegation.[8]

In any event, Korte and Workman's contention is now arguably foreclosed. *Meeks*, 2017 WL 782285 at *4 fn.3 ("Alternatively, we affirm because Meeks did not suffer any compensable damages from Ocwen's alleged violation. (citation omitted). Here, we agree with the district court that Meeks's counsel's NOE appeared to "falsely question[] the servicer's receipt in order to create a claim for damages.")

***Plaintiff had a reasonable factual basis to continue litigation after receiving the Rule 11 safe harbor letter***

As discussed, Attorney Cline testified that after receiving the safe harbor letter, she spoke

---

[7] *See, e.g., Baez v. Specialized Loan Servicing, LLC,* No. 15-81676-CIV, 2016 WL 1546445, at *2 (S.D. Fla. Apr. 15, 2016); *Graham v. Ocwen Loan Servicing, LLC,* No. 16-80011-CIV, 2016 WL 1573177, at *3 (S.D. Fla. Apr. 19, 2016) *Rodriguez v. Seterus, Inc.*, No. 15-61253-CIV, 2015 WL 5677182, at *2-3 (S.D. Fla. Sept. 28, 2015; *Miranda v. Ocwen Loan Servicing, LLC,* 148 F. Supp. 3d 1349, 1355 (S.D. Fla. 2015); *Russell v. Nationstar Mortg., LLC,* No. 4-61977-CIV, 2015 WL 541893, at *2 (S.D. Fla. Feb. 10, 2015)).*Martinez v. Shellpoint Mortg. Servicing,* No. 16-60026-CIV, 2016 WL 6600437, at *3 (S.D. Fla. Nov. 8, 2016). *But see Pimental v. Ocwen Loan Servicing, LLC,* No. 16-CV-62089, 2016 WL 6678523, at *3 (S.D. Fla. Nov. 8, 2016) ("The Court does not believe that 'actual damages' may be construed so broadly as to encompass unnecessary costs intentionally incurred solely for the purpose of bringing a lawsuit.").

[8] In fairness to my colleagues in the Southern District, these holdings are essentially conclusory, include little analysis, and cite only to other district court cases. In my view, the concept of actual damages contemplates more than making a photocopy and mailing a letter, the need for which was based in part on a false statement in order to create a claim for damages. The provision of Regulation X that Plaintiff alleges was violated merely requires a timely acknowledgment that Bayview received her request for information. It is difficult to contemplate how Plaintiff was injured or damaged merely by an untimely acknowledgment. *See Nicklaw v. Citimortgage, Inc.*, 839 F.3d 998, 1002 (11th Cir. 2016) ("[T]he relevant question is whether [the plaintiff] was harmed when this statutory right was violated."); *Friends of Animals v. Jewell*, 828 F.3d 989, 994–95 (D.C. Cir. 2016) (holding that the plaintiff did not have standing because the statutory provision plaintiff was attempting to enforce was merely a deadline requirement that did not obligate the defendant to actually disclose any information). Indeed, in *Meeks*, the Eleventh Circuit characterized the violation as a "'bare procedural violation.'" *Meeks*, 2017 WL 782285 at *5 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. ___, ___. 136 S. Ct. 1540, 1548-49, 1550 (2016)).

with Plaintiff, who maintained that she never received the acknowledgment letter. Accordingly, there was a reasonable factual basis to continue litigating the case, at least until Plaintiff was deposed. Two days after Plaintiff equivocated in her deposition, but after expiration of the 21-day safe harbor window, Plaintiff moved to dismiss the case with prejudice. Under the circumstances, I decline to impose sanctions under Rule 11.

Accordingly, Plaintiff's Motion to Dismiss (Dkt. 10) is **GRANTED**. This case is **DISMISSED** ***with prejudice***. Defendant's Motion for Dismissal and for Sanctions Against Betty Freeman and Korte & Wortman, P.A. Pursuant to Fed. R. Civ. P. 11 (Dkt. 11) is **DENIED**. The Clerk is directed to **CLOSE** the file.

**DONE AND ORDERED** this 7th day of March, 2017.

**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to: Counsel of Record